NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0267n.06

No. 20-3623

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| BILLIE JOANN HARMON, | ) | **FILED** |
| Plaintiff-Appellant, | ) | Jun 02, 2021 |
|  | ) | DEBORAH S. HUNT, Clerk |
| v. | ) |  |
|  | ) | ON APPEAL FROM THE |
| FIFTH THIRD BANCORP, | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE |
| Defendant-Appellee. | ) | SOUTHERN DISTRICT OF |
|  | ) | OHIO |
|  | ) |  |

Before: NORRIS, KETHLEDGE, and NALBANDIAN, Circuit Judges.

KETHLEDGE, Circuit Judge. Billie Joann Harmon argues that Fifth Third Bank overcharged her $35 in fees when she used its mobile check-deposit service. The district court dismissed her putative class-action complaint against the bank for failure to state a claim. We affirm.

I.

In 2015, Harmon opened a checking account with Fifth Third Bank. At that time, Harmon, like all other Fifth Third customers, agreed to the bank's "Rules, Regulations, Agreements, and Disclosures." Two of those agreements apply here: the "Deposit Account Rules & Regulations" (Rules and Regulations), which apply to all Fifth Third accounts, and the "Digital Services User Agreement & Electronic Communication Disclosures" (User Agreement), which govern online and mobile banking for those accounts.

Fifth Third's mobile-banking service allows customers like Harmon to deposit checks with their cell phones through the bank's mobile-device application. Before a customer can use this service, the customer must scroll through the User Agreement and accept its terms, which include, among other things, an acknowledgement that "[f]or certain services offered as a part of Fifth Third's Digital Services, you may be required to agree to additional terms and conditions." In its "Fees for Services" section, the User Agreement expressly provides that "[s]ome of the Digital Services may have fees associated with them that are not included in the Fifth Third Bank Rules and Regulations . . . . Information regarding such fees will be included within the applicable service." Fifth Third advises customers to "review such fees prior to engaging in a transaction" and further directs them to the "Mobile Banking FAQs" for additional, up-to-date fee information.

Harmon agreed to the terms of the User Agreement and thus gained access to the two services that Fifth Third offers for mobile check deposits: the "Standard Availability" service and the "Immediate Funds" service. The User Agreement, in-app disclosures, and Mobile Banking FAQs detail the services' respective features. The Standard Availability service, the default option, gives customers immediate access to "[u]p to $100 of the total of [their] check deposits for the business day," with the balance generally available on the next business day. But that immediate sum of $100 is not "guaranteed," since Fifth Third may recall the funds and charge them back to the customer if the check fails to clear. Fifth Third does not "charge a service fee for using the standard Mobile Deposit process," beyond the general fees that a customer pays for the checking account.

In contrast, a "service fee may apply for Immediate Funds[,]" which gives customers guaranteed and immediate access to the "full amount of the mobile deposit." Customers who opt into this service on the mobile application—by clicking the "Immediate Funds" button—can

immediately use the entire check balance to make purchases, withdrawals, and pay bills. And once the deposit is accepted, Fifth Third has no recourse if the check later fails. Fifth Third calculates the fee for this service as a percentage of the check amount; it discloses that fee structure in the User Agreement, Mobile Banking FAQs, and on the mobile application. The bank also discloses the exact amount of the fee after the customer chooses the Immediate Funds service on the mobile device—and before the customer submits the deposit.

In 2018, Harmon opted to use the Immediate Funds service thirteen separate times; three of those deposits were in the amount of $100 or less. For each deposit, Fifth Third charged Harmon a service fee, the exact amount of which was disclosed before Harmon proceeded with the transaction. Harmon agreed to pay these service fees, but now says that Fifth Third overcharged her a total of $35 by including the first $100 of her daily deposits in its fee calculations. Harmon thus filed a putative class action under the Class Action Fairness Act, *see* 28 U.S.C. § 1332(d), alleging various contract and consumer-protection violations. On Fifth Third's motion, the district court dismissed Harmon's complaint in its entirety for failure to state a claim. This appeal followed.

II.

We review de novo the district court's dismissal under Rule 12(b)(6). *See Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 377 (6th Cir. 2009). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Harmon challenges the dismissal of three state common-law claims—all of which, the parties agree, arise under Ohio law. *See Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008).

Harmon first argues that Fifth Third breached its service contract when it charged her fees on the first $100 worth of checks deposited through the Immediate Funds service. She asserts that the Rules and Regulations and the User Agreement—together, the "Contract"—promised customers free and immediate access to $100 of their check deposits each day, regardless of the mobile service used. Fifth Third responds that no such promise existed. In Ohio, a party breaches a contract if that party fails to perform according to its terms or acts in a manner contrary to its provisions. *See Lucarell v. Nationwide Mut. Ins. Co*., 97 N.E.3d 458, 469 (Ohio 2018). We therefore turn to the Contract's language to determine whether Fifth Third lawfully assessed an Immediate Funds fee on the first $100 of Harmon's total daily deposits.

Ohio courts interpret written contract terms according to their plain and ordinary meaning. *See Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). Where those terms are unambiguous, the contract's interpretation is a matter of law. *Id.* As relevant here, a "Funds Availability" chart in the Rules and Regulations lists separately two types of check deposits that Fifth Third makes "immediately" available for same-day cash withdrawals: (1) "*Mobile Deposits, using Fifth Third's 'Immediate Funds' Service*, made before 11:59 p.m. ET."; and (2) "Personal Accounts: $100 of your total check deposits *made in any manner* (Banking Center, ATM, *Mobile Deposit using standard availability service*)." (emphasis added). Harmon relies on the second bullet point—and specifically, the phrase "made in any manner"—to assert that every mobile-check deposit is, by definition, a "standard" deposit up to the amount of $100 in a business day. She then points to Fifth Third's promise in the User Agreement that the bank "does not charge a service fee for using the standard Mobile Deposit process." From these two premises, she concludes that Fifth Third promised to make the first $100 of *all* mobile deposits (what she says are those "made in any manner") immediately available and without charge.

But Harmon's proposed reading conflicts with the Agreement's terms. As an initial matter, Harmon misconstrues the breadth of the phrase "made in any manner." That "general term must take its meaning from the specific terms with which it appears." *Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 691 F.3d 821, 833 (6th Cir. 2012). Since the Funds Availability chart limits "any" to the three enumerated manners of deposits, it necessarily excludes "Mobile Deposits, using Fifth Third's 'Immediate Funds' Service"—a conclusion corroborated by the separate bullet point specific to that service. That the chart distinguishes mobile deposits made through the "standard availability service" from those made through the "Immediate Funds service" indicates that a deposit is considered "standard" based on the process used to make it— and not, as Harmon asserts, based on the amount of the deposit.

The rest of the Contract confirms that indication. *See Mantua Mfg. Co. v. Com. Exch. Bank*, 661 N.E.2d 161, 165 (Ohio 1996). For instance, the User Agreement differentiates between the two types of mobile deposits in its section titled, "Fifth Third Mobile Deposit & Mobile Deposit with Immediate Funds." The User Agreement refers to "Mobile Deposit" as "mobile standard deposit" and the "standard Mobile Deposit process"—distinct from "Mobile Deposit with Immediate Funds," which is a specialized "service that Fifth Third may provide" to its account holders. A separate subsection contains additional terms applicable only to the Immediate Funds service. And the User Agreement, like the Rules and Regulations, includes a chart that compares when customers can access their funds through each service. But nowhere does the Contract define a mobile deposit as "standard" based on its dollar value; rather, "standard" only describes the default process through which customers can make mobile check deposits.

Harmon's proposed interpretation, for its part, would elide the distinction between the two mobile-checking services and render other aspects of the Contract meaningless. *See Karabin v.*

*State Auto. Mut. Ins. Co.*, 462 N.E.2d 403, 406 (Ohio 1984).  For instance, Fifth Third agreed not to charge an Immediate Funds service fee on checks under $20—a provision superfluous if customers already had free and immediate access to $100 of their daily deposits under both services.  Since Harmon's argument is premised on a contractual obligation that does not exist, she cannot prove a breach of contract.

That leaves Harmon's two remaining claims:  that Fifth Third breached the implied covenant of good faith and fair dealing when it charged her the extra service fees, and that it unjustly enriched itself at her expense when it retained those fees.  These arguments are derivative of her breach-of-contract argument, and they fail for similar reasons.  As to the first, Ohio courts do not recognize an "independent cause of action for breach of the implied duty of good faith and fair dealing apart from a breach of the underlying contract."  *Lucarell*, 97 N.E.3d at 469.  Thus, because Harmon cannot prove that Fifth Third breached its contract, she cannot assert a standalone breach of implied-covenant claim.  Nor can Harmon assert an unjust-enrichment claim, since a plaintiff cannot recover under an unjust enrichment theory when an express contract covers the same subject.  *See Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 858–59 (6th Cir. 2020) (applying Ohio law).  Here, the Contract expressly covers the service fees at issue, so Harmon's unjust-enrichment claim—based on those same retained fees—must fail.

The district court's judgment is affirmed.